The next case is U.S. v. Long The next case is U.S. v. Long Good morning. May it please the court, Kristen Thayer for appellant Eric Long. I'd like to reserve two minutes for rebuttal and I'll watch my clock. Thank you. The sentencing record must show that the district court based the plus four enhancement here on reliable evidence presented by the government to discharge its burden. But here the court the record reveals the court relied on an incomplete video that shows only the end of the interaction. And the rest of the government's evidence contradicts a sworn affidavit presented by Long. Therefore, because the district court I don't understand that. Why does the government's evidence contradict it? The government presented the partial video and statements from Ms. Hood She had statements from Ms. Hood, right. And the statements from Ms. Hood contradict the sworn affidavit, which says that actually Ms. Hood was the one The court is then entitled to decide which to believe, no? Yes, but we don't even have a finding as to why, well, addressing at all the sworn affidavit declaration and we don't have any findings to reconcile the information or for the district court says, I don't believe the sworn affidavit declarant that Ms. Hood was the aggressor and pushed Mr. Long in the head. But the sworn affidavit, even if she was the aggressor and pushed Mr. Long, there was a later handwritten thing where she said he didn't have a gun, but the sworn affidavit doesn't say he didn't have a gun. She just doesn't address that part of the interaction basically. Correct. She says that, I mean, maybe she's saying it was self-defense, but whatever she says Hood did was not deadly or likely to cause an injury or anything. She was the aggressor and she pushed him or something. But in any event, she didn't say that what Hood said later happened and what the video showed didn't happen. She didn't say he didn't have a gun in her sworn affidavit. No, Your Honor. And Mr. Long told the police that he had a gun in his left hand down to his side. But she doesn't even acknowledge that. I mean, her story seems to be about what happened before the gun came onto the scene. Or it would be reconcilable by saying, all right, and after that he went and got the gun and whatever Hood said happened, happened. But it establishes that there is a credible claim of self-defense because Mr. Long has had a craniotomy. Part of his skull has been removed and replaced because he has this severe spinal tumor condition. And so the record at ER 375 shows that a blow to the head can be fatal for him. He could have brain bleeding. Right. But I mean, the district court made some fairly detailed findings at 37 to 38 about sort of narrating what in her view actually happened in this interaction. So what is your position with respect to what more did she need to say? I mean, if at the end of that she had said, and I don't believe Mr. Long when he says it was actually different, would that be enough? I think this court's case law has made clear that it is 100% dependent on the nuances of the findings in the record and what the record shows, you know, the evidence in the record. And so it would depend on how the district court could find this sworn declarant, you know, entirely not credible to disregard when the government hasn't presented any similar test evidence. It seems fairly straightforward. There's a video, there's the statement from Ms. Hood and the district court decided that that was an accurate reflection of what happened and that Mr. Long's version of events was not. I mean, it seems, looking at what the district court said, it seems fairly easy to follow the reasoning. You may disagree with how the district court weighed the evidence, but it's not hard to figure out what the court was doing, is it? Well, no, I think the record, the findings at ER 37 and 38 show the district court was relying on this incomplete video. But everyone agrees that that only captures the very end of the interaction. And so when they're... Not just the incomplete video, the court mentioned that in light of all of the evidence, in light of all the information, including he's not just brandishing it, he's walking towards her, he's upset, he's yelling, another person had to get in between them to push him away. So he's not afraid of her, she's the one who's afraid of him. And then he goes on and on, I'm not going to read the whole thing, but implicit in the district court's view of the evidence is the rejection of the statement that he was not the aggressor, right? I disagree because I think that is a play-by-play description of just the video and it doesn't capture anything that occurred before the video was recorded. Also, the video does not have audio, so we don't know exactly what was being said and there's a lot of things that you can't concretely know from that video. How is the district court's statement that he's not afraid of her and she's the one who's afraid of him, he was the aggressor and she wasn't, how is that not adequate? How is that based solely on the FaceTime video? Because this court said that in Barrero-Esaza, that this court can only review inferences that the district court actually draws from the evidence and there's not one mention of the district court saying, based, you know, sort of reconciling or just choosing one of the scenarios. It's as though Mr. Long didn't present any sworn testimony when the district court, if you just read the district court's decision. And that's because of the uniqueness of this case, because you have unsworn testimony and impartial video, when usually we, if there was a video evidence, usually, of course, it would be sufficient evidence. But here we know that it only captures the end of the interaction and the nuances of assault and self-defense require you to look at the totality, beginning with the phone call where Ms. Long said she was going to physically harm Long and his wife if he put her items outside. The findings here are insufficient for this court to be, to confirm that the enhancement is based on sufficiently reliable evidence. And it would be appropriate for this court to remand. If the, for resentencing, if the government is going to continue to seek this four-level enhancement, then the court at that time would be able to perhaps explain why and how the evidence can either be reconciled or Long's evidence is not credible to sufficiently – What, I mean, this is sort of, you're making it sound sort of like a, you know, an APA kind of, we need a more reasoned explanation from the district court. But I'm still trying to understand what more the district court would have to say than, you know, and to the extent, and earlier when I asked that, you said it would depend on all the facts. But I mean, if we think that that would be enough, then my question again is, why isn't that basically implicit in what the district court did say? So the first part of your question, I don't think that would be enough because this is not Mr. Long's word against Ms. Hood's word. This is a neighbor who knows everyone and who knows everyone in this complex where this unfortunate, you know, killing had occurred before and where Mr. Long had previously been shot. So this is not Mr. Long, you know, he said, she said in that scenario. And so that is important because the district court cannot, at least didn't give a reason to wholly discount the word of a neighbor who has no reason. There's been no presentation that neighbor would have a reason to misrepresent that Ms. Hood or Mr. Long. And so we'd ask, I see I'm into my rebuttal time. I'd ask that you remand for resentencing and I'll save the rest of my time for rebuttal if there are no more questions. All right. Thank you, counsel. Good morning. May it please the court. Adam Flake for the United States. The explanation given by the district court was adequate to convey that the district court had reviewed all of the evidence and that it simply chose to credit the video evidence and the statement from Mrs. or from Ms. Hood over the statement from Ms. Reese, who was the third party. The court clearly said, Mr. Long is not afraid of her. She's afraid of him. She reviewed the video. She said that she had reviewed the parties. It's also the case that there wasn't necessarily even a contradiction because they seemed to be talking about two different periods of time. Your Honor, the video covers only a shorter period of time. And there is some dispute, I guess, in the, in the, in between the two declarations. But the third party statement, as Your Honor mentioned previously, doesn't mention that Mr. Long came at her with a gun. The court was entitled to deny what Ms. Hood said either. I mean, or, or what is in the video. It just says before all, it seems to say before all that, she was the one causing the trouble. But that wouldn't necessarily negate the rest of it anyway. I mean, it, it, it, it couldn't possibly be self-defense because, I mean, what you see in the video was, she wasn't doing anything  I, I agree, Your Honor. But, but I, I have a question just because it's bothering me. I, I've looked at that video many times and it, you described in your brief one way and what you described in your brief, I just don't see in that video. Do I have a different video? I mean, you say that you can see that she's moving backwards and that, and that he's in her face and that, and so on. And I, all I could see was he's walking, he has the gun by his side and he's not, he can't hear anything, but he looks angry. And then somebody comes and you say that, that he must have hit her because the, the, that he hit her because you can see that the, the, the, the video jumping around and then somebody comes and pushes him away. But, but you, you don't, am I right that she is not on that video? She's, she's, she's taking the video, Your Honor. So she's not on it. So when you represent that, that you can see her moving backwards and that you can see that he's in her face and so on, you can't see any of that. Your Honor, first of all, the video speaks for itself, of course, or doesn't speak, but it shows what it shows. I kept thinking that maybe there's another video because the way you were describing it and what I was seeing had nothing to do with each other. Your Honor, the, my interpretation of the video after viewing it like, Your Honor, several times is Ms. Hood, Ms. Hood is filming from a very close range. I mean, you can see the, the veins bulging out of his neck as he approaches her and, and she's filming it. And then you can see from the video that, that Hood is moving forward and that's necessarily she's moving in the opposite direction from Hood as he approaches her. You can see that. You can see, you can see Hood move forward in the video and it's very obviously being shot at, at close range. I didn't claim that it showed it. I did not say that it shows that he hit her. I, I, it does not show that, but there are two points in the video where she's filming from extremely close range and then the camera begins to shake violently. And so I, I, I don't want to, I don't want to overstate what it's, what it shows, but it shows that he's approaching her angrily at very close range. And then the camera that she's holding begins to shake all over the place. Why? Because she was scared. So anyway. So, I, I mean, that's. All right. So as long as there's not another video, she's not in the video. That's, that's. Because at one point, I think you even say she's in the video. She's not in the video. Okay. I, I did not mean to suggest she's, she was in the video and I apologize if it, if, if my brief came out sounding that way. She was taking the video and so she didn't, you know, hold it out and, and include herself selfie style. She, she had it on her and I, I apologize if I, if I overstated what it showed. So, is it the government's view or is the government in agreement with the defense that there is a direct contradiction between what Ms. Reese said about who's the aggressor? Because the whole thing is a question of self-defense, right? And as I read the Reese declaration, it's, it's pretty definitive that throughout the incident, Dominique was the aggressor. She spit it at him. She forcefully shoved him on the back of his head and she threatened Eric and Nicole, physically assaulted Eric and continued to escalate the situation. Does the government agree with the contention that is, that goes directly to the heart of whether he acted in self-defense? Your Honor, the government's position is the district court did not commit clear error in its interpretation of the evidence. No, I understand that. And I'm asking a question that's the precursor to that issue, right? We've been discussing with your opposing counsel whether the factual record that the district court made was sufficient and it would have to be sufficient, I think, by implication because the district court never resolved this factual dispute. So I'm asking you, do you also see a direct contradiction between Ms. Reese's statement and what Mr. Long was trying to argue at sentencing? I certainly see a contradiction when Ms. Reese said that Hood at all times was the aggressor. Maybe she watched a different incident, but the portion that is captured on the video shows that Long was the aggressor. And so to the extent that she's talking about a different incident or a different period of time, or to the extent that she's lying, it's certainly not true that Hood at all times was the aggressor. Because the video portion that we have shows Hood, it shows Long approaching Hood angrily, apparently shouting. We don't have audio, but unless he's mouthing the words, he is- I'm a little confused by your indicating that she might have seen a different incident. Wasn't she there the whole time? Yeah, I didn't mean to say that she was witnessing a different incident, but she may have been describing a different time period. But when she says that Hood was at all times the aggressor, she certainly wasn't accurately describing the portion that is shown on the video. So I don't know if she just forgot to mention that Mr. Long came and Mrs. Hood with a gun and shouted at her and got very close to her and very physical. I don't know if she was lying or whether she wasn't there for that part or if she just didn't- I think that's the defense's point. That you have this seemingly unbiased neighbor who witnessed the entire incident, who described the person, the alleged victim, as the aggressor. So what the district court needed to do was to reconcile that in a more explicit way. That's how I understand- Your Honor, I mean, I certainly agree that the district court could have been more explicit. The district court could have laid out all of the evidence, like described all of the evidence and then made a very detailed finding. But I think that what the district court did here was sufficient. The district court said, watch what's happening here. It's- he is not afraid of her. She is afraid of him. And that was the finding. I can- He's yelling at another individual and has to get between them and push them away. So he's not afraid of her. She's the one who is afraid of him. She's the one who's calling her friend on FaceTime to see what's happening. Now, the district court certainly could have given a more fulsome explanation that I am rejecting Mr. Long's claim of self-defense because he was not placed in reasonable apprehension of harm. The court could have done that. But I think that what it did on this record is certainly sufficient to show that it had considered all of the evidence and made a factual finding that is not certainly has not been shown to be clearly erroneous. And if the court doesn't have any further questions, I'll submit. Thank you. Just one point on rebuttal. I think the issue is going to the court's questions about whether the evidence is contradictory. ER 348 is the second page of the declaration. And it shows that this witness saw the full incident up until the police came. So the versions of events are contradictory. She does leave out entirely the fact that he was walking toward her with a gun. That's not in her- I mean, we see that, and that's not in her declaration. She says- and her story is that Dominique spit at him and then the police arrived. And there's just no account of the fact that he, at some point, went and got a gun and was walking toward her with a gun. It's not in there. And we know that happened. Well, I have two answers to your Honor's point. Is first, the gun was down by his side, so she may have not seen it. And second of all, if that is the reason that a court may disregard the sworn testimony, there needs to be something in the record that shows that was why. This court makes clear in the cases reviewing the sufficiency of the evidence and whether it's reliable that this court doesn't make the findings for the district court. This court reviews the findings in light of the record and the type of evidence and whether it is contradictory or otherwise of, you know, lacking a minima indicia of reliability. And that's what we're missing here. And that's why I'd request this court remand for resentencing with instructions that if the district court's going to impose the plus for enhancement to ensure the findings are adequate to show the evidence is reliable. All right. Thank you very much, Counsel. Can I just ask one more question? Absolutely. What was the, he was actually sentenced to 24 months, is that right? Yes. Which was, well, I understand that this doesn't matter, but it was well below. It was a variance, yes. What the guideline sentence was for point enhancement and without, right? Without it, what were the guidelines? The guidelines would have been, I believe, 30 to 37, and it would have been 8 months with the same level of variance that was warranted by the mitigation of his health and other circumstances. It would have been, was there mitigation? Where's the 8 months coming from? The 8 months is coming from, I can show you the district court, our opening brief, page 11, explains the guideline range. And the district court imposed a 24-month sentence down from a 46 to 57-month range based on his mitigating evidence of his extreme health conditions and how hard. I'm assuming not because the guidelines would have dictated, but you're assuming you would have decreased it by the same amount. Exactly, Your Honor, because that remains the same. Rather than to the same amount. Yes, the mitigation remains the same regardless of the enhancement. I see. Okay, thank you. Thank you very much. Thank you very much. The matter is submitted, and we're in recess until tomorrow morning. All rise.
judges: BERZON, NGUYEN, MILLER